# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>CHRISTOPHER PATRICK BOYD,<br><br>Debtor.<br>_____<br><br>HEMP RECOVERY COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER PATRICK BOYD,<br><br>Defendant. | Bankruptcy Case No. 22-12455 TBM<br>Chapter 13<br><br><br><br><br><br><br>Adv. Pro. No. 22-1258 TBM |

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

### I.   Introduction.

Bankruptcy provides a temporary safe haven for "honest but unfortunate debtor[s]"[1] who "can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'"[2] The foundation of American insolvency law is the possibility of a discharge which provides a "fresh start" — an economic second chance which acts as a sort of safety valve in our capitalist system. However, not all debtors are entitled to a discharge. The Bankruptcy Code[3] "has long prohibited debtors from discharging liabilities incurred on account of their fraud . . . ."[4] In enacting Section 523(a)(2)(A), Congress struck the balance between the rights of debtors to fresh starts and the interests of creditors who are victims of fraud whether perpetrated by the debtor

---

[1]     *Grogan v. Garner,* 498 U.S. 279, 286-87 (1991); *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) ("The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'").

[2]     *Grogan,* 498 U.S. at 286 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

[3]     11 U.S.C. § 101 et seq.  Unless otherwise indicated, all references to "Section" are to Sections of the Bankruptcy Code.

[4]     *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998).

or his or her agent or partner.[5]  Those few debtors who engage in pre-bankruptcy fraud must continue to bear responsibility for the damages resulting from their misconduct.

Years ago, Plaintiff-Creditor, Hemp Recovery Company, LLC ("HRC"), sued Defendant-Debtor, Christopher P. Boyd (the "Debtor"), for fraud (false representation as well as nondisclosure and concealment) in the Denver County District Court (the "State Trial Court") in the lawsuit captioned: *Hemp Recovery Company, LLC v. Boyd et al.*, Case No. 2019-CV-30498 (Denver County District Court, Denver, Colorado) (the "State Court Action").  After lengthy litigation and a multi-day trial, the State Trial Court issued an Oral Ruling, Order, and Judgment in favor of HRC and against the Debtor in the amount of $337,306.85 plus interest on account of the Debtor's fraud.  The Debtor appealed to the Colorado Court of Appeals and lost again.  Then he filed for protection under Chapter 13 of the Bankruptcy Code.

As part of the bankruptcy process, HRC initiated this Adversary Proceeding against the Debtor under Section 523(a)(2)(A).  HRC asserts that the Debtor owes it a debt of $337,306.85 plus interest and that such debt is nondischargeable by reason of the Debtor's fraud.  Recently, HRC filed its "Motion for Summary Judgment" (the "Summary Judgment Motion").  In the Summary Judgment Motion, HRC relies on the doctrine of collateral estoppel and contends that the State Trial Court's final determinations set forth in its Oral Ruling, Order, and Judgment are determinative and dictate that the debt owed to HRC is nondischargeable under the Section 523(a)(2)(A) framework.  The Debtor concedes the existence of a debt owing to HRC but contends that such debt is dischargeable, nevertheless.

The Court ultimately finds in favor of HRC.  The Oral Ruling, Order, and Judgment issued by the State Trial Court in the State Court Action are dispositive.  Together, they establish the existence of a debt owed by the Debtor to HRC and that such debt is nondischargeable under Section 523(a)(2)(A) because it is for "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ."  The Debtor's arguments to the contrary are unavailing.  The Debtor is not entitled to relitigate the issues already ably decided by the State Trial Court and affirmed on appeal.

## II.     Jurisdiction and Venue.

The Court has jurisdiction to enter final judgment in this nondischargeability dispute pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the bankruptcy estate); § 157(b)(2)(B) (allowance or disallowance of claims against the estate); (b)(2)(I) (determinations as to the dischargeability of particular debts); and § (b)(2)(O) (other proceedings affecting the liquidation of assets of the estate.  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.  Both HRC and the Debtor have conceded that this Court has jurisdiction to enter judgment and that venue is proper in the Court. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 674-86 (2015) (bankruptcy court may enter final judgment even with respect to *Stern* claims if parties

---

[5]     *Bartenwerfer v. Buckley,* 598 U.S. ___, 143 S. Ct. 665, 670 (2023).

consent); *see also Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 793-94 (10th Cir. 2009) (bankruptcy courts have jurisdiction to determine nondischargeability of debts, liquidate nondischargeable debts, and enter a monetary judgment on nondischargeable debts).

### III. Procedural Background.[6]

### A. The Bankruptcy Main Case.

On July 8, 2022, the Debtor filed for protection under Chapter 13 of the Bankruptcy Code thereby initiating the bankruptcy case captioned: *In re Boyd*, Bankr. Case No. 22-12455 TBM (Bankr. D. Colo.) (the "Main Case").[7] On his Statement of Financial Affairs, the Debtor identified two legal actions in which the Debtor was a party during the year before the start of the Main Case:

1. *Hemp Recovery Co., LLC v. Boyd et al.*, Case No. 2019-CV-30498 (Denver County District Court, Denver, Colorado); and

2. *Hemp Recovery Co., LLC v. Boyd et al.*, Case No. 2020-CA-451 (Colorado Court of Appeals) (the "State Court Appeal").[8]

The Debtor asserted that the State Court Action and the State Court Appeal were both "concluded" prior to the beginning of the Main Case.[9] On his Schedule E/F, the Debtor identified HRC as a creditor holding a noncontingent, liquidated, and undisputed claim in the amount of $393,811.95 by reason of a judgment issued in the State Court Action.[10] Later, HRC filed Proof of Claim No. 2 in the Main Case as a general unsecured claim in the amount of $336,318.44 (the "HRC Claim"). HRC attached a copy of a Judgment from the Colorado Court of Appeals in the State Court Appeal to the HRC Claim. The Debtor did not object to the HRC Claim, which has been deemed allowed. The only other Proof of Claim filed in the Main Case is a general unsecured claim in the amount of $1,481.86. So, the HRC Claim constitutes more than 99.5% of the aggregate claims pool.

Contemporaneously with the commencement of the Main Case, the Debtor filed a "Chapter 13 Plan Including Valuation of Collateral and Classification of Claims" (the "First Plan").[11] The Chapter 13 Trustee objected to confirmation of the First Plan.[12] Accordingly, the Debtor submitted a second "Chapter 13 Plan Including Valuation of

---

[6] The Court takes judicial notice of the dockets in this Adversary Proceeding and the Main Case (as defined below) for purposes of describing the current procedural status. *See St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may *sua sponte* take judicial notice of its docket).
[7] Main Case Docket No. 1. Unless otherwise indicated, the Court will refer to particular documents from the CM/ECF docket for the Main Case using the convention: "Main Case Docket No. ___."
[8] *Id.* at 10.
[9] *Id.*
[10] *Id.* at 27.
[11] Main Case Docket No. 6.
[12] Main Case Docket No. 12.

Collateral and Classification of Claims" (the "Second Plan").[13]  The Chapter 13 Trustee and HRC initially objected to confirmation of the Second Plan; however, both later withdrew their objections.[14]  Accordingly, on January 12, 2023, the Court confirmed the Second Plan.[15]  Under the confirmed Second Plan, the Debtor is obligated to pay only $8,538 to his two creditors.  So, if the Debtor satisfies his obligations under the Second Plan over the next 5 years, HRC stands to receive only about 2.5% of the HRC Claim.

**B.     The Adversary Proceeding.**

   **1.     The Complaint.**

Presumably disappointed with its potential recovery under the Second Plan (and its predecessor), on October 10, 2022, HRC timely filed a "Complaint Objecting to Non-Dischargeability of Christopher P. Boyd's Debt to Hemp Recovery Company Pursuant to 11 U.S.C. § 523(a)(2)(A)" (the "Complaint") thereby initiating this Adversary Proceeding:  *Hemp Recovery Company, LLC v. Boyd*, Adv. Pro. No. 22-1258 (Bankr. D. Colo.) (the "Adversary Proceeding").[16]  In the Complaint, HRC stated three causes of action but all under Section 523(a)(2)(A).  The First Claim for Relief asserts that the Debtor "obtained property and incurred liability to HRC by false representation" and requests judgment under Section 523(a)(2)(A) for "the false representation."  The Second Claim for Relief asserts that the Debtor "obtained property and incurred liability to HRC by nondisclosure and concealment" and requests judgment under Section 523(a)(2)(A) for "the false representation."  The Third Claim for Relief asserts that the Debtor "obtained property and incurred liability to HRC by negligent misrepresentation" and requests judgment under Section 523(a)(2)(A) for "the false representation."  The Court does not quite understand why HRC alleged three separate counts all for false representations under Section 523(a)(2)(A).  In any event, at the end of the Complaint, HRC asked for the Court to "enter judgment in its favor against the Debtor determining that the judgment held by Hemp Recovery Company, LLC against Debtor Christopher P. Boyd in the base amount of $337,306.85, plus interest accruing at 8% per annum, is exempted from discharge under the provisions of 11 U.S.C. § 523(a)(2)(A)."[17]  The requested amount is slightly different than the amount listed on the Debtor's Schedule E/F and in the HRC Claim.

   **2.     The Debtor's Answer.**

On January 11, 2023, the Debtor submitted his "Answer" to the Complaint (the "Answer").[18]  In the Answer, the Debtor admitted a few of the factual allegations in the Complaint, denied most of the factual allegations in the Complaint, and asserted that the Court should deny the relief requested in the Complaint.

---

[13]   Main Case Docket No. 16.
[14]   Main Case Docket Nos. 20, 25, 32, and 36.
[15]   Main Case Docket No. 38.
[16]   Docket No. 1.  Unless otherwise indicated, the Court will refer to particular documents from the CM/ECF docket for the Adversary Proceeding using the convention: "Docket No. ___."
[17]   *Id*.
[18]   Docket No. 12.

### 3. Pre-Trial Proceedings.

On March 21, 2023, the Court conducted a Pretrial Scheduling Conference. Thereafter, the Court entered a "Scheduling Order" setting the dispute framed by the Complaint and Answer for a two-day trial commencing on August 22, 2023.[19] The Court also set a series of pre-trial deadlines.

### C. The Summary Judgment Motion, Response, and Reply.

In advance of the trial, HRC timely filed its Summary Judgment Motion.[20] Thereafter, the Debtor filed its "Response" in opposition to the Summary Judgment Motion.[21] HRC submitted a subsequent "Reply" in support of the Summary Judgment Motion.[22] Having reviewed the Summary Judgment Motion, Response, and Reply, the Court has determined that oral argument is not necessary. Instead, the Court is able to decide based upon the fulsome written materials submitted by capable counsel.

### IV. Legal Standard Governing Motions for Summary Judgment and Burden of Proof.

Motions for summary judgment are governed by Fed. R. Civ. P. 56, as incorporated herein by Fed. R. Bankr. P. 7056. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). The moving party bears the initial burden of identifying the basis for its motion and designating those portions of the record which it believes entitles it to judgment. Fed R. Civ. P. 56(c); *Celotex*, 477 U.S. at 323. In response, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Instead:

> [T]he nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant . . . . To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citations omitted). *See also Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (same); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1181 (10th Cir. 2013) (nonmoving party has the affirmative duty of coming forward with evidence supporting

---

[19] Docket No. 19.
[20] Docket No. 23.
[21] Docket No. 24.
[22] Docket No. 27.

his claim to summary judgment); *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (same).

In reviewing a motion for summary judgment, the Court must "view all facts and evidence in the light most favorable to the party opposing summary judgment." *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012) (brackets omitted). But, unsupported, conclusory allegations will not create an issue of fact, and the nonmoving party must do more than provide its subjective interpretation of the evidence. *Tran v. Sonic Indus. Servs.*, Inc., 490 Fed. Appx. 115, 117-118 (10th Cir. 2012) (unpublished) ("Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof.") (quoting *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995)). "A party cannot rely entirely on pleadings, but must present significant probative evidence to support its position." *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1247 (10th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). And, "[i]f the nonmoving party fails to make a sufficient showing on an essential element with respect to which [it] has the burden of proof, judgment as a matter of law is appropriate." *Id*. However, "when the evidence could lead a rational fact-finder to resolve the dispute in favor of either party, summary judgment is improper." *C.L. Frates & Co. v. Westchester Fire Ins. Co.*, 728 F.3d 1187, 1189 (10th Cir. 2013).

### V. <u>Procedural Rules for Selecting the Undisputed Facts</u>.

The critical first step in adjudicating a motion for summary judgment is to identify the undisputed facts. Only then can the Court apply the law to the facts and reach a legal conclusion. Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.")

Procedural rules dictate how the alleged undisputed facts are to be presented and challenged. Fed. R. Civ. P. 56(c) governs the facts alleged by the movant or challenged by the non-movant:

> (c) Procedures.
>
> > (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> >
> > > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .

Then, Fed. R. Civ. P. 56(e) provides the consequences for "failing to properly support or address a fact":

6

>   (e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
>   >   (1) give an opportunity to properly support or address the fact;
>   >
>   >   (2) consider the fact undisputed for purposes of the motion;
>   >
>   >   (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or
>   >
>   >   (4) issue any other appropriate order.

The Bankruptcy Court for the District of Colorado supplemented the Federal Rules of Civil Procedure by enacting its Local Bankruptcy Rules. L.B.R. 7056-1 governs summary judgment motions in Colorado and provides:

>   (a) Motion and Memorandum in Support. Any motion for summary judgment pursuant to Fed. R. Bankr. P. 7056 must include . . . .
>
>   >   (3)   a short and concise statement, in numbered paragraphs containing only one fact each, of the material facts as to which the moving party contends there is no genuine issue to be tried . . . .

The counterpoint is L.B.R. 7056-1(b) which governs oppositions to motions for summary judgment:

>   (b) Response and Memorandum in Opposition. Responses in opposition must include . . . .
>
>   >   (3)   a short and concise statement of agreement or opposition, in numbered paragraphs corresponding to those of the moving party, of the material facts as to which it is contended there is a genuine issue to be tried . . . .

Each alleged fact or contravention of fact (whether by the movant or the non-movant) must be properly supported. L.B.R. 7056-1(c) tells how:

7

  (c) Supporting Evidence. Each statement by the movant or opponent pursuant to subdivisions (a) or (b) of this Rule, including each statement controverting any statement of material fact by a movant or opponent, must be followed by citation to admissible evidence either by reference to a specific paragraph number of an affidavit under penalty of perjury or fact contained in the record. Affidavits must be made on personal knowledge and by a person competent to testify to the facts stated, which are admissible in evidence. Where facts referred to in an affidavit are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document must be attached with the relevant passages marked or highlighted.

Finally, L.B.R. 7056-1(d) states what happens if a non-movant does not properly contravene alleged undisputed facts:

  (d) Admission of Facts. Each numbered paragraph in the statement of material facts served by the moving party is deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement served by the opposing party.

## VI. **Undisputed Facts**.

In the Summary Judgment Motion, HRC complied with Fed. R. Civ. P. 56(c) and L.B.R. 7056-1(a) by presenting 36 alleged "Undisputed Material Facts."[23] HRC also supported all of such 36 alleged undisputed facts with citations to "particular parts of materials in the record" including: (1) HRC's complaint in the State Court Action[24]; (2) the Debtor's answer in the State Court Action[25]; (3) the State Court's Oral Ruling, dated January 15, 2020[26]; (4) an Order, dated January 16, 2020, in the State Court Action[27]; (5) the final Judgment in the State Court Action, dated February 11, 2020[28]; and (6) the final Appellate Opinion in the State Court Appeal, dated September 9, 2021.[29] In the Response, the Debtor did not object to the admissibility of any of the 36 alleged undisputed facts. Further, the Debtor did not provide "a short and concise statement of agreement or opposition, in numbered paragraphs corresponding to those of the moving party, of the material facts as to which it is contended there is a genuine issue to be

---

[23] Docket No. 23 at 3-9.
[24] *Id.* Ex. *1*.
[25] *Id.* Ex. *3*.
[26] *Id.* Ex. 2 at 156-97.
[27] *Id.* Ex. 4.
[28] *Id.* Ex. 5.
[29] *Id.* Ex. 6.

tried" or any contravening "citation to admissible evidence." L.B.R. 7056-1(b) and (c).[30] Accordingly, the Court accepts as "undisputed" each of the 36 alleged undisputed facts identified by HRC.

Notwithstanding that the Debtor effectively conceded the undisputed nature of all of the facts identified by HRC in the Summary Judgment Motion, many of the undisputed facts are not particularly germane to resolution of the Summary Judgment Motion. Given the nature of the Summary Judgment Motion which focuses on whether a state court judgment should be afforded collateral estoppel effect, the Court identifies the following as the key undisputed facts:

On February 6, 2019, HRC filed its "Complaint with Jury Demand" (the "State Court Complaint") thereby initiating the State Court Action, *Hemp Recovery Company, LLC v. Boyd et al.*, Case No. 2019-CV-30498 (Denver County District Court, Denver, Colorado), in the Denver County District Court (the "State Trial Court").[31] As set forth in the State Court Complaint, HRC asserted claims against the Debtor (and others) for civil theft, two types of securities fraud, false representation, nondisclosure and concealment, negligent misrepresentation, civil conspiracy, unjust enrichment.[32] The Fourth Claim for Relief (false representation) and Fifth Claim for Relief (nondisclosure and concealment) (together, the "Fraud Claims") asserted by HRC in the State Court Action are forms of common law fraud under Colorado law. The Debtor submitted an "Answer to Complaint" (the "State Court Answer") denying liability in the State Court Action.[33]

The State Trial Court conducted a bench trial in the State Court Action on January 13, 14, and 15, 2020.[34] After the conclusion of the bench trial in the State Court Action, on January 15, 2020, the State Trial Court issued its comprehensive findings of fact and conclusions of law in the form of an oral ruling on the State Court Complaint and State Court Answer (the "Oral Ruling").[35] In the Oral Ruling, the State Trial Court decided that the Debtor was liable to HRC on the Fraud Claims. Furthermore, in the rather extensive Oral Ruling, the State Trial Court determined, among other things:

---

[30] At the end of the Response, the Debtor did assert that "the following are disputed facts: (a) was Plaintiff's reliance upon representations justifiable? (b) Does the assignment of the claim from the Desmonds to Hemp Recovery Company, LLC violate the rules of champerty? (c) Who is the real party in interest?" Docket No. 24 at 14. The Debtor's attempt to identify "disputed facts" is unavailing. First, none of the three supposedly "disputed facts" are actually facts at all. Instead, at best, the Debtor enumerated some questions about legal issues. Second, none of the purported "disputed facts" are tied to specific facts alleged to be undisputed by HRC in the Summary Judgment Motion. Third, the Debtor failed to comply with L.B.R. 7056-1(b) and (c) because, among other deficiencies, the Debtor failed to cite admissible evidence in contravention of the specific facts asserted by HRC to be undisputed. As a result, the Debtor did not effectively contest any of the specific facts advanced by HRC in the Summary Judgment Motion.
[31]   Docket No. 23 Fact No. 18 and Ex. 1.
[32]   Docket No. 23 Fact No. 19 and Ex. 1.
[33]   Docket No. 23 Fact No. 21 and Ex. 3.
[34]   Docket No. 23 Fact No. 23 and Ex. 2.
[35]   Docket No. 23 Fact No. 24 and Ex. 2 at 156-197.

- The Debtor misrepresented to HRC's predecessor in interest that Foothills Ventures (an entity in which the Debtor is the principal owner) had the present capacity to extract or process cannabidiol ("CBD") oil from hemp when it did not;[36]

- The Debtor failed to disclose to HRC's predecessor in interest that Foothills Ventures was not licensed to extract CBD oil at the time of negotiations over an agreement;[37]

- "[T]here was a misrepresentation from the very beginning" made by the Debtor and his father to HRC's predecessor in interest.[38]

- "Plaintiff [HRC] has proved these common law fraud type claims against [the Debtor's father] as to both buckets.  As to --- and as against Christopher Boyd [the Debtor] as to the hemp bucket."[39]

- The Debtor is liable to HRC for $332,517 in damages for the Fraud Claims.[40]

The day after the entry of the Oral Ruling, the State Trial Court entered an "Order" (the "Order") in the State Court Action effectively confirming the Oral Ruling.[41] The State Trial Court found and concluded, among other things, that:

> 4.    Plaintiff [HRC] has proved its Fourth Claim for Relief (False Representation) [and] Fifth Claim for Relief (Nondisclosure and Concealment) . . . as against all non-defaulting Defendants [including the Debtor].
> . . . .
>
> 7.    Plaintiff [HRC] has proved that all Defendants [including the Debtor] owe Plaintiff [HRC] damages associated with the missing hemp in the amount of $332,517, plus costs and post-judgment interest at the statutory rate.  A judgment will enter for these damages against all Defendants [including the Debtor], jointly and severally . . . .[42]

A few weeks later, the State Trial Court entered a "Final Judgment" (the "Judgment") against the Debtor and others in a slightly higher dollar amount which presumably included accrued interest.[43] The Judgment provided, among other things:

---

[36]  Docket No. 23 Fact Nos. 8 and 15 and Ex. 2 at 166, 172, 173, and 180.
[37]  Docket No. 23 Fact No. 17 and Ex. 2 at 172.
[38]  Docket No. 23 Fact No. 26 and Ex. 2 at 173.
[39]  Docket No. 23 Fact No. 28 and Ex. 2 at 191.
[40]  Docket No. 23 Ex. 2 at 192-93.
[41]  Docket No. 23 Fact No. 29 and Ex. 4.
[42]  *Id*.
[43]  Docket No. 23 Fact No. 30 and Ex. 5.

10

>   2.  The Clerk shall enter judgment in favor of Hemp Recovery Company, LLC [HRC] and against . . . Christopher P. Boyd [the Debtor] . . ., jointly and severally, in the amount of $337,306.85.
>
>   . . . .
>
>   4.  The total judgment against Defendant[] Christopher P. Boyd [the Debtor] . . . is $337,306.85.
>
>   5.  Interest shall accrue on the judgment[] from January 16, 2020 until satisfaction thereof is made at the rate of eight percent per annum compounded annually.[44]

Thereafter, the Debtor (and another defendant) appealed the Judgment to the Colorado Court of Appeals (the "State Appeals Court") in the case captioned: *Hemp Recovery Company, LLC v. Boyd et al.*, Case No. 2020-CV-451 (Colorado Court of Appeals).[45]  On September 9, 2021, the State Appeals Court issued its Opinion (the "Appellate Opinion") affirming the Oral Ruling, Order, and Judgment in all respects.[46] Not long afterward, the Debtor filed for protection under Chapter 13 of the Bankruptcy Code in the Main Case.[47]

## VII.   Legal Analysis.

**A.   The General Framework for Dischargeability Determinations.**

In Section 523(a)(2)(A), Congress provided as follows:

>   A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt — . . .
>
>   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —
>
>   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

11 U.S.C. § 523(a)(2)(A).

Section 523(a) nondischargeability claims all require a two-part analysis. First, "the bankruptcy court must determine the validity of the debt under applicable law." *Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 8 (10th Cir. BAP 2016); *see also Lang v. Lang (In re Lang)*, 293 B.R. 501, 513 (10th Cir. BAP 2003) (if the alleged debt is

---

[44] *Id.*
[45] Docket No. 23 Fact No. 31 and Ex. 6.
[46] Docket No. 23 Fact No. 32 and Ex. 6.
[47] Main Case Docket No. 1.

11

for fraud, "state law of fraud controls with respect to whether fraud has occurred"). This is referred to as the "claim on the debt" component. *Thompson*, 555 B.R. at 8. Second, if there is a valid debt, "the bankruptcy court must determine the dischargeability of that debt under Section 523." *Id.*; *see also Lang*, 293 B.R. at 513 ("bankruptcy law controls with respect to the determination of nondischargeability"). This is referred to as the "dischargeability" component. *Thompson*, 555 B.R. at 8. In the context of claims based upon fraud and fraudulent concealment, there may be substantial overlap between the "claim on the debt" and the "dischargeability" components.

HRC bears the burden of establishing nondischargeability of a particular debt under Section 523(a) by a preponderance of the evidence. *Grogan*, 498 U.S. at 286-87 ("requiring the creditor to establish by a preponderance of the evidence that his claim is not dischargeable reflects a fair balance between these conflicting interests."); *Houston v. Munoz (In re Munoz)*, 536 B.R. 879, 884 (Bankr. D. Colo. 2015) (requiring creditor to prove Section 523(a) claims by a preponderance of the evidence). Additionally, exceptions to discharge under Section 523(a) "are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997). *See also Sawaged v. Sawaged (In re Sawaged)*, 2011 WL 880464, at *3 (10th Cir. BAP Mar. 15, 2011) (same).

**B.    The Collateral Estoppel Doctrine Applies.**

The Summary Judgment Motion presents a classic argument under the collateral estoppel doctrine. As set forth above, in Section 523(a)(2)(A) disputes, the Bankruptcy Court must decide whether the debtor owes a debt and whether such debt is nondischargeable by reason of "false pretenses, a false representation, or actual fraud." However, the doctrine of collateral estoppel (sometimes referred to as issue preclusion) "precludes relitigation of an issue [of fact or law] that was litigated and decided in a previous proceeding." *Flanders v. Lawrence (In re Flanders)*, 517 B.R. 245, 258 (Bankr. D. Colo. 2014); *See also Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."); *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009). Collateral estoppel "is a doctrine designed to promote the fundamental policies of finality, economy, consistency, and comity in the judicial process." *Flanders*, 517 B.R. at 258 (citing *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 n.6 (1982)).

> In determining the preclusive effect of a state court judgment, the full faith and credit statute, 28 U.S.C. § 1738, "directs a federal court to refer to the preclusion law of the State in which judgment was rendered." *Nichols v. Bd. of Cty. Comm'rs*, 506 F.3d 962, 967 (10th Cir. 2007) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985)). Issue preclusion "is a judicially created, equitable doctrine that bars the relitigation of an issue that has been previously decided in

12

> another proceeding." *Reynolds v. Cotten*, 274 P.3d 540, 543
> (Colo. 2012) (citing *In re Tonko*, 154 P.3d 397, 405 (Colo.
> 2007)). It is designed to "relieve parties of multiple lawsuits,
> conserve judicial resources, and promote reliance on the
> judicial system by preventing inconsistent decisions." *Id.*
> (quoting *Tonko*, 154 P.3d at 405).

*In re Hauck*, 489 B.R. 208, 213 (D. Colo. 2013).

It is black-letter law that collateral estoppel may be (and frequently is) "invoked to bar relitigation of the factual issues underlying the determination of dischargeability [under Section 523] . . . ." *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 764 (10th Cir. 1988); *see also Grogan,* 498 U.S. at 290 ("application of that standard [preponderance of the evidence] will permit exception from discharge of all fraud claims creditors have successfully reduced to judgment."); *Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979) ("if, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17 [the predecessor of Section 523], then collateral estoppel . . . would bar relitigation of those issues in the bankruptcy court."); *Steward Software Co., LLC v. Kopcho (In re Kopcho)*, 2014 WL 3933657 (Bankr. D. Colo. Aug. 12, 2014); *McCain Foods USA Inc. v. Shore (In re Shore)*, 317 B.R. 536, 541 (10th Cir. BAP 2004) ("Collateral estoppel applies in bankruptcy court actions to determine the dischargeability of a debt.").

In this case, the law of collateral estoppel of the State of Colorado applies. Under Colorado law, collateral estoppel bars subsequent relitigation of an issue if:

> (1) The issue precluded is identical to an issue actually
> litigated and necessarily adjudicated in the prior proceeding;
> (2) The party against whom estoppel was sought was a party
> to or was in privity with a party to the prior proceeding; (3)
> There was a final judgment on the merits in the prior
> proceeding; and (4) The party against whom the doctrine is
> asserted had a full and fair opportunity to litigate the issues
> in the prior proceeding.

*Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo.1999)) (citing *Michaelson v. Michaelson*, 884 P.2d 695, 700-01 (Colo. 1994). *See also Reynolds v. Cotton,* 274 P.3d 540, 543 (Colo. 2012); *In re Tonko*, 154 P.3d 397, 405 (Colo. 2007).

In the Summary Judgment Motion, HRC contends that the State Trial Court's Oral Ruling, Order, and Judgment are preclusive under the collateral estoppel doctrine to establish the existence of a debt for false representation or actual fraud. Based on the undisputed facts presented in the Summary Judgment Motion, the last three elements of collateral estoppel obviously are satisfied and merit little discussion. The party against whom estoppel is sought (*i.e.* the Debtor) was a party defendant in the State Court Action. As reflected in the trilogy of the Oral Ruling, Order, and Judgment, the State Trial Court entered a final judgment on the merits after trial in the State Court Action determining that the Debtor is liable to HRC in the amount of $337,306.85 plus

interest for false representation (Fourth Claim for Relief) and nondisclosure and concealment (Fifth Claim for Relief). The Oral Ruling is chock-full of factual findings supporting the Judgment. And, the Debtor had a full and fair opportunity to litigate the factual and legal issues in the State Court Action. Later, the Debtor appealed the Oral Ruling, Order, and Judgment to the State Appeals Court. He lost again and did not appeal further. So, the Oral Ruling, Order, and Judgment are definitively final and binding on the Debtor.

The Debtor's *only* legal challenge to application of the collateral estoppel doctrine is under the first element: whether the issue precluded is identical to an issue actually and necessarily determined in the prior proceeding. In the Response, the Debtor asserts that Section 523(a)(2)(A) "is not identical to the common law claims of fraud, false pretenses, and the like."[48] The Debtor asserts that the difference pertains to reliance. According to the Debtor, Colorado common law fraud requires "reasonable reliance" while Section 523(a)(2)(A) requires "justifiable reliance." Given this asserted difference, the Debtor apparently wishes to relitigate the topic of reliance. To assess the Debtor's argument, the Court must compare the elements of Colorado common law fraud by false representation against the elements of Section 523(a)(2)(A) false representation.

Fraud is an intentional tort that has been recognized in Colorado since Statehood. *See Wheeler v. Dunn*, 22 P. 827, 833 (Colo. 1889) (identifying elements of fraud by misrepresentation claim). "[T]he constituents of fraud, though manifesting themselves in a multitude of forms, are so well recognized that they may be said to be elementary." *Morrison v. Goodspeed*, 68 P.2d 458, 477 (Colo. 1937). The Colorado Supreme Court repeatedly has confirmed the legal elements required for establishing a common law fraud claim based upon misrepresentation:

> (1) a false representation of a material existing fact; (2) knowledge on the part of the one making the representation that it is false; (3) ignorance on the part of the one to whom the representation is made of the falsity; (4) representation made with intention that it be acted upon; and (5) representation resulting in damage.

*Kinsey v. Preeson*, 746 P.2d 542, 550 (Colo. 1987) (citing *Trimble v. City and Cnty. of Denver*, 697 P.2d 716 (Colo. 1985)). *See also Concord Realty Co. v. Cont'l Funding Corp.*, 776 P.2d 1114, 1118 (Colo. 1989) (same list of fraud elements); *Brody v. Bock*, 897 P.2d 769, 775-76 (Colo. 1995) (same); *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005) (same); *Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2012) (same); *Bristol Bay Prods., LLC v. Lampack,* 312 P.3d 1155, 1160 (Colo. 2013) (same).

Although often described as a five-part test, the fifth element of fraud — damages — contains further requirements. A decade ago, the Colorado Supreme Court confirmed that the damages element should be "unpack[ed] . . . into its three discrete sub-parts, requiring the plaintiff to prove separately actual reliance, the

---

[48] Docket No. 24 at 8.

reasonableness of that reliance, and that the plaintiff's reliance caused its damages." *Bristol Bay*, 312 P.3d at 1160.  In doing so, the Colorado Supreme Court cited the Colorado Jury Instructions – Civil § 19:1 (2013) (listing seven requirements for fraud instead of five elements).  Notably, at the time of the *Bristol Bay* decision, the Colorado Jury Instructions – Civil § 19:1 (2013) formulated the reliance test as whether "plaintiff's reliance was justified."  And, the most recent version of the Colorado Jury Instructions – Civil § 19:1 (2023) also uses the same test: whether "plaintiff's reliance was justified."

Both before and after the *Bristol Bay* decision, Colorado appellate courts have used the phrases "reasonable reliance" and "justifiable reliance" (or variants) interchangeably as virtual synonyms.  For example, in *Brody,* the Colorado Supreme Court observed that "[t]he gist of the fraud action is Bock's change in position in justifiable reliance on Brody's knowing false statement."  *Brody*, 897 P.2d at 776.  In the most recent Colorado Supreme Court case on the topic, in *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP,* 420 P.3d 223, 234 (Colo. 2018), the appellate court identified the test for "fraud by affirmative misrepresentation" and noted that "[plaintiff] was required to offer evidence that . . . [plaintiff] had a right to rely on, or was justified in relying on, the misrepresentation . . . ."  *Id*.  (also observing that a "party's reliance on a purported representation is not justified when the party is aware of or on inquiry notice of the falsity of the representation").  *See also Barnes v. State Farm Mut. Auto. Ins. Co.*, 497 P.3d 5, 11 (Colo. App. 2021) ("To establish a claim for fraudulent misrepresentation, a plaintiff must prove that . . . the plaintiff had a right to rely on or was justified in relying on the misrepresentation"); *Hoff v. Indus. Claim Appeals Office*, 383 P.3d 50, 62 n.1 (Colo. App. 2015) (in decision concurring in part and dissenting in part observing that "[t]he maker of a fraudulent misrepresentation may be subject to liability to a third person who acts in justifiable reliance upon the misrepresentation."); *Frontier Expl. Inc. v. Am. Nat'l Fire Ins. Co.*, 849 P.2d 887, 891 (Colo. App. 1992) ("false representation requires . . . justifiable reliance by the one to whom the representation is made.").

The Debtor is correct that some Colorado appellate courts construing the Colorado common law tort of fraud by false representation use the "reasonable reliance" formulation.  On the other hand, the most recent decisions from the Colorado Supreme Court and the Colorado Court of Appeals speak to "justification":  whether the plaintiff "was justified in relying" or "acts in justifiable reliance."  Whichever phraseology the Colorado courts use (reasonable or justifiable reliance) seems not to have any material impact on those courts' analysis of the elements of false representation.  In any event, whilst the state of the Colorado law on the topic is a bit confusing, the Court need not try to clear up that confusion for purposes of adjudicating the Summary Judgment Motion.  Rather, the Court will accept the Debtor's argument that Colorado employs a "reasonable reliance" standard.

That said, what does Section 523(a)(A)(2) "false representation" require?  The seminal Section 523(a)(A)(2) decision explaining the elements for "false representation" is *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367 (10th Cir. 1996).  According to *Young*, "to establish that a claim is nondischargeable [under Section 523], the creditor must prove the following elements by a preponderance of the evidence":

15

> [1] the debtor made a false representation; [2] the debtor
> made the representation with the intent to deceive the
> creditor; [3] the creditor relied on the representation; [4] the
> creditor's reliance was reasonable; and [5] the debtor's
> representation caused the creditor to sustain a loss.

*Id*. at 1373.  S*ee also Riebesell*, 586 F.3d at 789 (reciting the same elements).

The *Young* formulation used the term "reasonable" in relation to reliance. However, in *Field v. Mans*, 516 U.S. 59, 74-75 (1995), which had been handed down months before *Young*, the United States Supreme Court held that the "required level of reliance" is justifiable reliance.  *Id*.  In *Reibesell*, the Tenth Circuit explained its use of the term "reasonable" in *Young* by indicating that *Fields* "*clarified* that the proper standard is 'justifiable reliance' rather than 'reasonable reliance'."  *Riebesell*, 586 F.3d at 789 n.3 (emphasis added).  According to the Tenth Circuit:

> The fourth element of the § 523(a)(2)(A) test requires the
> creditor's reliance to be "reasonable." The appropriate
> standard is not "reasonableness" in the sense of whether an
> objectively reasonable person would have relied upon the
> debtor's false representations.  Rather, the inquiry is whether
> the actual creditor's reliance was "justifiable" from a
> subjective standpoint.

*Riebesell*, 586 F.3d at 791 (citing *Field*, 516 U.S. at 74-75).

So, giving all the benefit of the doubt to the Debtor, Colorado fraud law might require "reasonable reliance"[49] while Section 523(a)(2)(A) employs "justifiable reliance." Even if that is true, the difference in the two standards does not benefit the Debtor. Reasonable reliance is an objective standard based upon whether a reasonable person would have relied on the alleged false representations.  However, as the United States Supreme Court instructed, justifiable reliance is a "less demanding [standard]" than reasonable reliance.  *Field*, 516 U.S. at 61; *see also* RICHARD LEVIN & HENRY J. SOMMER, 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][d] (Matthew Bender 16th ed. Supp. 2020) (justifiable reliance is "a less exacting standard" than reasonable reliance).  Instead of an objective standard, justifiable reliance is a subjective standard that focuses on the "the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than [applying] a community standard of conduct to all cases." *Riebesell,* 586 F.3d at 792 (quoting *Field*, 526 U.S. at 71); *see also Wharton v. Flanagan (In re Flanagan)*, 2014 WL 3932647, at *7 (Bankr. D. Colo. 2014) (noting difference between "reasonable reliance" and "justifiable reliance").

---

[49]    Again, the most recent Colorado appellate decisions and the Colorado Jury Instructions use the word "justifiable" when describing the reliance standard.  *Rocky Mountain Expl*., 420 P.3d at 234; *Barnes*, 497 P.3d at 11.  If that is the standard, there would be no difference at all between the elements needed to establish fraud by misrepresentation under Colorado law and the elements required to establish a Section 523(a)(2)(A) claim for false representation.

16

If, as the Debtor contends, the State Trial Court applied a "reasonable reliance" standard rather than "justifiable reliance," then a determination of reasonable reliance is more than sufficient to meet the Section 523(a)(2)(A) requirement. "Since justifiable reliance is a lower standard than reasonable reliance, that should end the inquiry." *Glencove Holdings, LLC v. Bloom (In re Bloom)*, 622 B.R. 366, 433 (Bankr. D. Colo. 2020).

The State Trial Court found that the Debtor made at least one key false representation: that "[Foothills] Ventures [the entity owned by the Debtor], at that moment, had the capacity to extract [CBD oil]."[50] The State Trial Court determined that there was reliance on such statement.[51] And, after explaining the nature of the "common law versions of fraud" for false representation (and nondisclosure and concealment), the State Trial Court decided as a matter of fact and law that HRC "proved these common law fraud type claims . . . against [the Debtor] as to the hemp bucket."[52] In other words, the State Trial Court necessarily decided that HRC proved every required element for common law fraud by false representation, which elements include reasonable reliance. The State Appeals Court upheld the Judgment against the Debtor too.

There is no daylight between the State Trial Court's prior adjudication and what Section 523(a)(2)(A) mandates. The doctrine of collateral estoppel mandates that the Court give credence to the Oral Ruling, Order, and Judgment and not permit relitigation of the same issues. HRC has met its burden to establish that the Debtor owes HRC a debt of $337,306.85 plus interest under the Oral Ruling, Order, and Judgment. Even the Debtor acknowledges the existence of the debt because, on his Schedule E/F, the Debtor identified HRC as a creditor holding a noncontingent, liquidated, and undisputed claim in the amount of $393,811.95 by reason of the Judgment issued in the State Court Action.[53] And, through the application of the collateral estoppel doctrine to the Oral Ruling, Order, and Judgment, HRC has meet its burden to prove that the debt is "for money . . . obtained by . . . a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).[54]

C. **The Debtor's Other Arguments are Unavailing.**

In addition to trying to resist application of the collateral estoppel doctrine, the Debtor contests the Summary Judgment Motion on a few other assorted grounds. None work.

---

[50] Docket No. 23 Ex. 2 at 172.
[51] *Id.*
[52] Docket No. 23 Ex. 2 at 191.
[53] In his Answer to the Complaint in this Adversary Proceeding, the Debtor admitted that the State Trial Court had entered the Judgment in the amount of $337,306.85, plus interest at 8% per annum. Complaint ¶ 30 and Answer ¶ 30.
[54] The Court is unaware of any reported bankruptcy decision finding that a final, post-trial, fraud judgment entered by a Colorado state court against a debtor pre-bankruptcy somehow should not be afforded collateral estoppel effect under Section 523(a)(2)(A) (assuming that the actionable misrepresentation was not about the debtor's or an insider's financial condition).

The Debtor contends that "Section 523(a)(2)(A) prohibits the use of verbal statements regarding financial condition. Common law fraud has no such limitation."[55] It is true that the statutory text of Section 523(a)(2)(A) contains an exception: "false pretenses, false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition.*" (Emphasis added). Written statements "respecting the debtor's or an insider's financial condition" fall instead under the purview of Section 523(a)(2)(B). *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1764 (2018). But there an obvious disconnect with the Debtor's position: none of the actionable false representations made by the Debtor and identified in the Oral Ruling are statements "respecting the debtor's or an insider's financial condition." The main misrepresentation identified by the State Trial Court was that "[Foothills] Ventures [the entity owned by the Debtor], at that moment, had the capacity to extract [CBD oil]" when it did not.[56] That misrepresentation does not fall into the Section 523(a)(2)(A) exception.

The Debtor also takes another pass at the reliance element. The Debtor contends that there is "no evidence of justifiable reliance."[57] Ignore, for the moment, that the extensive Oral Ruling issued by the State Trial Court contains numerous findings pertaining to reliance and concludes that HRC met all the requirements to prove Colorado common law fraud by false representation. What the Debtor really seems to be saying is that the State Trial Court *erred* because it did not have sufficient evidence to issue the Oral Ruling, Order, and Judgment. Again, there is an unassailable retort. Under the *Rooker-Feldman* doctrine, the Court has no capacity to review the Oral Ruling, Order, and Judgment issued by the State Trial Court for error. In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the United States Supreme Court noted: "Federal district courts . . . are empowered to exercise original, not appellate, jurisdiction. . . ." *Id.* at 283. As such, the United States Supreme Court has developed a doctrine in recognition of the lack of district court jurisdiction to examine certain matters. It explained:

> Plaintiffs in *Rooker* and *Feldman* had litigated and lost in state court. Their federal complaints, we observed, essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments. We declared such suits out of bounds, *i.e.*, properly dismissed for want of subject-matter jurisdiction.
>
> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

---

[55] Docket No. 24 at 8.
[56] Docket No. 23 Ex. 2 at 172.
[57] Docket No. 24 at 11-12.

*Id.* at 284 (internal citations omitted).  The Tenth Circuit Court of Appeals reiterated that the "*Rooker-Feldman* [doctrine] precludes federal district courts from effectively exercising appellate jurisdiction over claims 'actually decided by a state court' and claims 'inextricably intertwined' with a prior state-court judgment."  *Silva v. US Bank, Nat'l Ass'n*, 294 F. Supp. 3d 1117, 1128 (D. Colo. 2018) (citing *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006)).  *See also Hopp v. Coffman (In re Hopp)*, 606 B.R. 889, 895 (Bankr. D. Colo. 2019) (quoting *Silva*)).  So, the Court cannot second-guess the sufficiency of the evidence relied upon by the State Trial Court.  That is the job of the State Appeals Court and the State Appeals Court performed its job.  The Debtor appealed the Oral Ruling, Order, and Judgment.  The State Appeals Court affirmed the State Trial Court and the Debtor never appealed the affirmance.

The Debtor posits a final argument as an alternate attack on the Oral Ruling, Order, and Judgment.  He contends that "the Desmonds assigned their claims against Defendants [including the Debtor] [to HRC] . . . .  These claims are for intentional torts . . . .  As such, the assignment of an intentional tort to an unrelated third party to champion is an unenforceable agreement [by reason of champerty]."[58]  Yet again, the Debtor's argument misses the mark because it is another attack on the Oral Ruling, Order and Judgment.  HRC (not anyone else) initiated the State Court Action by filing the State Court Complaint.  The Debtor submitted the State Court Answer.  He did not raise standing or champerty as a defense.  After a lengthy period of litigation and a trial, the State Trial Court issued the Oral Ruling, Order, and Judgment in favor of HRC directly.[59]  Now, the Debtor claims some sort of error by reason of champerty.  Under the *Rooker-Feldman* doctrine, the Debtor cannot attack the Oral Ruling, Order, and Judgment in this Court.  *Saudi Basic Indus.*, 544 U.S. at 284; *Mo's Express*, 441 F.3d at 1233; *Silva*, 294 F. Supp. 3d at 1128.  HRC is the holder of a final Oral Ruling, Order, and Judgment in its favor and against the Debtor.

### VIII.  Conclusion.

Based upon the undisputed facts set forth in the Summary Judgment Motion, HRC has met its legal burdens.  Per the Oral Ruling, Order, and Judgment issued in the State Court Action, HRC is a creditor as the holder of the Judgment against the Debtor.  The Debtor owes HRC $337,306.85 plus post-judgment interest at the rate of 8% per annum.  HRC has established, through the Oral Ruling, Order, and Judgment and application of the doctrine of collateral estoppel that the foregoing debt embodied in the Judgment is nondischargeable under Section 523(a)(2)(A) since the debt is "for money . . . obtained by . . . a false representation, or actual fraud."  There is no need for the Court to adjudicate any further disputes in this Adversary Proceeding.  Accordingly, the Court:

ORDERS that HRC's Summary Judgment Motion is GRANTED, and the Court will enter a separate judgment in favor of HRC and against the Debtor declaring the

---

[58]  Docket No. 24 at 12-13.

[59]  The State Trial Court explicitly addressed HRC's status as the Plaintiff in the State Court Action.  The State Trial Court observed: [B]y the way, I need to acknowledge that the Desmonds have assigned their claims to the Plaintiff.  That's why I've been calling them Desmonds instead of Plaintiffs.  They are not the Plaintiff.  The Plaintiff in this case is Hemp Recovery Company.  And the assignment is of record."  Docket No. 23 Ex. 2 at 181.

Judgment nondischargeable pursuant to Section 523(a)(2)(A) and that determination which will dispose of this Adversary Proceeding; and

FURTHER ORDERS that the Final Pre-Trial Conference set for August 8, 2023, at 10:30 a.m. and the Trial on the Complaint and Answer set to commence on August 21, 2023, at 9:00 a.m. are VACATED.

Dated this 10th day of July, 2023.

BY THE COURT:

*Thomas B. McNamara*
Thomas B. McNamara
United States Bankruptcy Judge